CARIBBEAN INDUSTRIES, INC., Plaintiff and Appellant, *v.* RO-BERTO CAMACHO GARCÍA, Defendant and Appellee.

No. 10131. Argued June 1, 1950.—Decided July 28, 1950.

*Víctor Gutiérrez Franqui, Lino Saldaña* and *Luis F. Sánchez Vilella,* for appellant. *Samuel R. Quiñones* and *Domingo Candelario* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The plaintiff Caribbean Industries, Inc., maintains two causes of action against Roberto Camacho Garcia. In support of the first it alleges that the latter owes it $4,988.93 for merchandise it sold and delivered to him. In the second it claims payment of $4,000 for merchandise delivered to the defendant on consignment.

The defendant denied all the averments of the complaint and maintained on the contrary that on or about October 30, 1947 the parties agreed that he would represent plaintiff's products throughout the Island, on an exclusive basis, per payment of a commission of 7 per cent of all the sales made by the latter in Puerto Rico; that in March 1948 they reached an understanding by virtue of which plaintiff would consign on credit with him merchandise valued at $4,000, defendant binding himself on his part to answer only for the excess of the aforesaid $4,000, which excess the defendant would pay

to the plaintiff weekly and it being subsequently understood that the latter would not present for payment the checks drawn by the defendant in its favor until authorized by the latter; that in violation of the agreement entered into, plaintiff presented for payment four checks drawn by him in the former's favor without notifying him thereof, plaintiff having stopped payment of the checks in order to enforce the agreement above mentioned; that in violation of the existing contract, plaintiff filed its complaint without having at any time settled the accounts with the defendant; and that on the date of the filing of the complaint he had, unsold and on consignment, merchandise valued at $2,000. Wherefore, the defendant deems that the amount claimed is not an account stated, and that the action is premature. By way of counterclaim and cross complaint, he alleged, in brief, that early in 1948 the plaintiff authorized him to enter into an advertising campaign for its products, the expenses of which would be paid by the plaintiff; that in connection therewith the defendant incurred expenses amounting to $2,129.55, which plaintiff has not paid either in full or in part; that the plaintiff owes the defendant the commissions corresponding to the sales made in the plant by the former from December 1947 until October 1948, which the defendant estimates in more than $3,000.[1] The defendant also alleged damages to his credit amounting to $5,000 due to plaintiff's violation of the contract of commissions as well as damages amounting to $3,000 due to plaintiff's presentation for payment of the four checks drawn on October 8; 1948.

The case was heard upon these allegations, both parties introducing abundant oral and documentary evidence in support of their respective contentions. After hearing the evidence, the lower court rendered judgment dismissing the complaint, on the ground that the two causes of action alleged

---

[1] During the trial the defendant amended this allegation and reduced the amount to $1,126.12.

therein are premature, and granting the counterclaims, and consequently adjudging the plaintiff to pay to the defendant the amounts of $1,064.77 and $1,226.12 (*sic*),[2] for the advertising campaign and as commissions, respectively, plus costs and $250 as fees for defendant's attorney.

Plaintiff appealed from that judgment. It charges the lower court with error in dismissing the two causes of action of its complaint on the ground that they were premature and in awarding $250 as fees for defendant's attorney.

According to the findings of the lower court "the parties agreed on or about March 1948 that plaintiff would deposit on credit with the defendant merchandise valued at $4,000 without any limitation for payment thereof (save in the case that the parties ceased to do business between themselves and after a final liquidation) the defendant binding himself to pay periodically the balance of the aforesaid $4,000. That business between the plaintiff and the defendant continued in this fashion since that date, both parties establishing as a commercial custom the practice that the plaintiff would not present for payment defendant's checks until he advised it at the proper time; that in October 1948 the defendant made out four (4) checks in favor of the plaintiff totalling $4,142.58 which the latter presented for payment in bulk, on the same day, without the usual previous notification to the defendant and without the latter's advice; that plaintiff violated the commercial custom established to the effect that defendant's checks would not be presented for payment until plaintiff were notified thereof by the defendant; . . . to sum up, that on the date of the filing of the complaint no cause of action had arisen in favor of the plaintiffs. The court likewise finds that the amount of $4,000 claimed in the second cause of action was a credit given by the plaintiff to the defendant rather than merchandise sold on consignment." After stating that in commercial contracts, as well as "in civil

---

[2] It should have been $1,126.12. See footnote 1.

contracts the spirit of the obligation prevails," and citing § 82 of the Code of Commerce,[3] the trial court stated, among its conclusions of law, that "plaintiff and defendant established between themselves the practice of not presenting for payment defendant's checks until plaintiff was notified by the former in this sense"; that "since this practice was established between the parties, as a commercial custom it had legal force between both, and the defendant was entitled to trust this manner of payment"; and that "in view of the existence of a practice between the parties as to the manner of payment, plaintiff having violated said contractual obligation by presenting for payment defendant's checks without the usual previous notice and the latter's notification, no cause of action arose in favor of the plaintiff when the bank refused to pay said checks."

We agree with the lower court that if the parties agreed that the checks drawn by the defendant in payment of the merchandise sold to him by the plaintiff in excess of $4,000 should not be presented for payment without the latter having informed the former, such agreement or covenant had legal force between them [4] and that if plaintiff, violating the terms of the agreement, presented for payment the four checks drawn by the defendant in its favor, was unable to cash them for lack of funds, it was not entitled to immediate resort to the courts to claim their amount. However, it clearly appears from the record that although plaintiff on October 25, 1948 presented for payment to the bank the checks drawn in its favor by the defendant for $942.49, $1,233.66, $916.73,

---

[3] Section 82 of the Code of Commerce provides:

"Commercial contracts shall be valid and shall cause obligations and causes of action whatever may be the form and language in which they are executed, the class to which they belong, and the amount of the contract, provided their existence is shown by any of the means provided by civil law..."

[4] Section 1044 of the Civil Code, 1930 ed., provides:

"Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations."

and $1,049.70, the latter was aware of such action taken by the plaintiff and forthwith advised the bank to stop payment thereon. There is no doubt, then, that as appears from the evidence the defendant learned that the plaintiff presented for payment the checks in question as well as that the amount thereof was outstanding because he had not paid the same. Such knowledge unquestionably was equivalent to the notification agreed upon by the parties. Hence, pursuant to the provisions of Rule 15 (*b*) and (*c*)[5] it may be considered that plaintiff notified defendant as agreed to. See *Bithorn* v. *Santana*, 68 P.R.R. 281, 284; *Sánchez* v. *Cooperativa Azucarera*, 66 P.R.R. 330, 333; *Arvelo* v. *Román*, 65 P.R.R. 699, 702; and *Méndez* v. *Buscaglia, Treas.*, 64 P.R.R. 707, 711.

■ On the other hand, the record and the evidence disclose that the sales in excess of $4,000 were to be paid weekly by the defendant. As to these, a current account clearly existed between the parties, the balance of which could be sued for without complying with any prerequisite, since the liquidation of such an account current is a simple arithmetical operation. *Sanabria* v. *Rosa et al.*, 32 P.R.R. 537; *Lizardi* v. *Marrero*, 32 P.R.R. 551; *Giménez* v. *Alfonso*, 29 P.R.R. 300. Cf. *Cochran* v. *Fernández*, 47 P.R.R. 666; *Berio* v. *De Santiago*, 43 P.R.R. 233. Therefore, the lower court erred in deciding that the first cause of action was premature and in dismissing it on this ground.

■ As to the second cause of action the district court likewise erred in deciding that it was prematurely exercised.

---

[5] Rule 15 (*b*) and (*c*) of the Rules of Civil Procedure essentially provides:

"(*b*) *Amendments to Conform to the Evidence.*— ...Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect the result of the trial of these issues.* ...

"(*c*) *Retroactive Effect of Amendments.*—Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." (Italics ours.)

It rested mainly in its finding that plaintiff had bound himself to give defendant a credit in merchandise valued at $4,000, in that this credit would not be collected by the former until the termination of its dealings with the defendant and in the fact that since plaintiff had thus bound itself, it could not demand payment thereof from the defendant until the termination of their business. It considered that that was a prerequisite to the filing of the complaint. However, since the evidence tended to show that as a matter of fact such relations had ceased, the court should have considered that said requisite had been complied with [6] and gone to the merits of that cause of action.

Inasmuch as the case shall be remanded to the lower court, the costs and attorney's fees shall depend on the final judgment.

The judgment appealed from will be reversed and the case remanded to the lower court in order that in connection with the two causes of action alleged in the complaint it enter judgment pursuant to the terms of this opinion and in accordance with the evidence presented.